The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.





Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 13 |
| | ) |
| STEPHEN JOHN CHERRY AND | ) CASE NO. 05-65296 |
| DENISE ANNE CHERRY, | ) |
| | ) JUDGE RUSS KENDIG |
| Debtors. | ) |
| | ) |
| | ) **MEMORANDUM OF OPINION** |
| | ) **(NOT INTENDED FOR** |
| | ) **PUBLICATION)** |

Before the court is the Application for Compensation filed by Debtors' counsel, Donald M. Miller (hereafter "Attorney Miller"), on March 12, 2009. Through the fee application, Attorney Miller seeks a total of $4,972.50, of which $1,250.00 has been paid. Debtors filed an objection on April 7, 2009. The Court conducted a hearing on April 29, 2009. Attorney Miller and Debtor Denise Anne Cherry participated in the hearing.

The court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

Debtors filed a chapter 13 petition on September 2, 2005 and were represented by Attorney Miller. Included with the petition was a "Disclosure of Compensation of Attorney for Debtor(s)" ("2016(b) disclosure"). It indicates that he charged Debtors $1,250.00 for legal services. It is signed by counsel and does not require Debtors' signatures. According to the disclosure, Attorney Miller received nothing prior to filing the case except the $194.00 filing fee. The balance was to be paid through the plan. The 2016(b) disclosure, in paragraphs six and seven, provides:

> 6. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
>    a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
>    b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
>    c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
>    d. Representation of the debtor in adversary proceedings and other contested bankruptcy matters;
>    e. [Other provisions as needed]
>
> 7. By agreement with the debtor(s), the above-disclosed fee does include the following service:

Question 7 was left blank.

In addition to the 2016(b) disclosure, Attorney Miller also filed a copy of his Fee Engagement Agreement for Chapter 13 Proceeding (hereafter "Agreement"), which is attached to the application. The document was executed on September 2, 2005 and is signed by both debtors and counsel. The following are listed as services included:

> (1) Analysis of the financial situation and rendering advice and assistance to the client in determining whether to file a petition under TITLE 11, United States Code;
> (2) Preparation and filing of the petition, lists, statements or schedules;
> (3) Representation of the debtor at the Section 341 Meeting;
> (4) Amendments of lists, statements or schedules to comport with developments which may have occurred before or at the Section 341 Meeting;
> (5) Attendance, if necessary, at confirmation hearings;
> (6) Removal of garnishments or wage assignments;
> (7) Negotiation of valuation of secured claims and/or the presentation of evidence thereon at confirmation hearings;
> (8) Additional phone conferences;
> (9) Objections to claims (without hearing);
> (10) Relief from Stay Proceedings (2);

(11)   Modification of Plan (1);

The following services are listed as services which may be requested but not covered by the disclosed fee:

    (a)   Motions/Objections (requiring a hearing);
    (b)   Relief from Stay Proceedings (after 2);
    (c)   Adversary or contested proceedings;
    (d)   Extraordinary time spent on any matter outside of the usual and customary;
    (e)   Title or lien search relating to real property;
    (f)   Modifications of Plan (after 1).

ATTORNEY reserves the right to file a Fee Application which will supplant the foregoing.

The fee for any additional services is not disclosed, nor is there any reference to the $1,250.00 set forth in the 2016(b) disclosure although the agreement . The Agreement does reference the "amount to be paid by CLIENT to ATTORNEY in accordance with the Administrative Order entered December 15, 1998 and as later amended."

At the time of this filing, Administrative Order 04-2 was in effect which established a presumptive fee of $1,250.00. The order outlined the basic services to be provided for the presumptive fee. Paragraph seven of the order allows attorneys to file fee applications for novel, complex or non-routine matters. Attorney Miller filed a fee application on March 12, 2009 seeking total fees of $4,972.50, $3,722.50 above the amount paid through the chapter 13 plan. According to the itemized fee application, Attorney Miller spent 22.10 hours on this case, resulting in an hourly rate of $225.00.

Debtors objected to the supplemental fee application and attended the hearing held on April 29, 2009. Debtors contended that they thought all fees were "covered under the bankruptcy" and stated that if they had known that some of the services were not typical bankruptcy services and not included in the fee, they would not have requested additional services. According to Debtors, Mr. Cherry has been put on indefinite lay-off status with his employer and they do not have the ability to pay the additional fees.

## LAW AND ANALYSIS

The issue in this case is not about the competency of Attorney Miller. No objections have been raised as to the quality of the services rendered. Rather, the issues presented are whether the requested fee is reasonable.

The guidelines for compensation awards are set forth in 11 U.S.C. § 330. Section 330(a)(4)(B) provides:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based

on a consideration of the benefit and necessity of such
services to the debtor and the other factors set forth in this
section.

In the Sixth Circuit, "reasonable compensation" is based on a lodestar calculation which requires a bankruptcy court to "multiply the attorney's reasonable hourly rate by the number of hours reasonably expended." See In re Boddy, 950 F.2d 334, 337 (6th Cir. 1991). The lodestar amount is subject to upward or downward adjustment based upon the following factors:

(1) the time and labor required; (2) the novelty and difficulty
of the question; (3) the skill requisite to perform the legal service
properly; (4) the preclusion of other employment by the attor-
ney due to acceptance of the case; (5) the customary fee;
(6) whether the fee is fixed or contingent; (7) time limitations
imposed by the client or the circumstances; (8) the amount in-
volved and the results obtained; (9) the experience, reputation,
and ability of the attorney; (10) the 'undesirability' of the case;
(11) the nature and length of the professional relationship with
the client; and (12) awards in similar cases.

Geier v. Sundquist, 372 F.3d 784, 793 (6th Cir. 2004) (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)); see also Hensley v. Eckerhart, 461 U.S. 424 (1983).

The first factor in the lodestar analysis, the attorney's reasonable hourly rate, is a simple matter. Dividing the amount requested by the number of hours spent means that Attorney Miller is charging $225.00 per hour for his services. Although the court notes that the rate was not disclosed in either the 2016(b) disclosure or the fee agreement, it appears the parties had a meeting of the minds as to the rate. The rate was not contested.

Evaluation of the "hours reasonably expended" is not as straightforward. To begin the analysis, the Court notes that there is a customary fee for bankruptcy cases in this Court. The fee is established by looking at the "Guidelines for Compensation and Expense Reimbursement of Professionals," and Administrative Order 04-02, which governs the procedure for allowance of attorney's fees in chapter 13 cases. At the time of this filing, the administrative order provided a no-look fee of $1,250.00[1] and outlined basic services to be covered by this fee. In addition to these documents, the fee application, the 2016(b) disclosure and the Agreement must be considered. The 2016(b) disclosure is of little value because it is not signed by Debtors, so it lends little to provide insight as to Debtors' understanding of the fee for this case. The Agreement executed by Debtors and Attorney Miller, however, is more helpful and reliable. It gives a list of covered and non-covered services, but also specifically reserves Attorney Miller's right to file a fee application. Reviewing all the documents, the Court concludes Debtors should have understood that the base fee for this case was $1,250.00, but could be altered with

---

[1] On September 2, 2005, Debtors filed a signed copy, also dated September 2, 2005, of the Rights and Responsibilities.

the provision of atypical or non-routine services through the filing of a fee application. Consequently, Debtors knew, or should have known, that a fee application could be filed and bring the total fees to more than $1,250.00.

As a general rule, in a standard chapter 13 case, the no-look fee traditionally encompasses services through confirmation of the plan. *See* Admin. Ord. 04-02. The confirmation order was entered on March 23, 2006. In addition to the pre-confirmation services, the standard fee also includes limited, typically post-confirmation, services. In this case, Attorney Miller billed nearly the entire $1,250.00 fee before the case was filed and over over one-half of the fee application is for services rendered post-confirmation.

Examining the time and labor required in this case leads the Court to the conclusion that the services provided were far from typical or routine and are therefore compensable above the presumptive fee. The plan was amended once prior to confirmation and modified six times following confirmation. Administrative Order 04-2, paragraph (h), anticipates filing and serving one amended plan or one modification as a component of the presumptive fee. The parties' Agreement contemplates the fee only including one modification. Consequently, modifications two through five were outside the parameters of the both the Agreement and the administrative order guidelines. The Court finds that services related to all the modifications of the plan after the first one represent additional compensable services. The Court calculates 3.40 hours related to these modifications, or $765.00.

Attorney Miller also represented Debtors through mediation in the state foreclosure case, as well as assisted Debtors in obtaining a loan modification of their mortgage note. None of these services are included on either list of typical bankruptcy services, nor are they routine bankruptcy services and therefore were not part of the presumptive, no-look fee. Attorney Miller spent 4.10 hours assisting Debtors with a loan modification and providing representation in the foreclosure case and is entitled to $922.50 for these services.

Additionally, Attorney Miller filed three motions for offline distributions, allowing Debtors to obtain funds back from the trustee for emergency purposes. Paragraph (o) of the administrative order suggests that two of these type of motions would be included in the presumptive fee. The Court finds that Attorney Miller should be compensated for .50 hours for the third motion for offline distribution, or $112.50. Attorney Miller's time and labor performing work and beyond the typical realm of bankruptcy services entitles him to additional compensation in the amount of $1,800.00. This is reimbursement of post-confirmation services which were not included in the presumptive fee.

Turning to pre-confirmation services, the Court notes that Attorney Miller billed for 4.5 hours before the case was filed, representing nearly all of the presumptive fee. In most circumstances, the Court would take issue with this time expenditure, particularly billing three hours for preparation of the plan and schedules. This case, however, had a severe time limitation: the initial consultation was conducted on September 1, 2005 and a foreclosure sale was scheduled on September 6, 2005. It appears Attorney Miller filed the case within twenty-four hours of meeting with Debtors. His thoroughness and completeness is evidenced by the lack of amendments to the schedules or statement of

financial affairs following the filing. The timing also impacts the potential "undesirability" of the case to other attorneys. Consequently, the Court finds that there is a "premium" for the "emergency" services and finds that the hours expended prior to the filing were reasonable. Post-filing, the Court finds that all services not otherwise addressed are included in the presumptive fee.

Assessing the other factors in determining the reasonableness of the fee, it does not appear that the case presented novel or difficult questions. Attorney Miller had the skills and experience necessary for the case. His employment in this case did not preclude other employment, as is evident in billing only 22.10 hours over the course of approximately three and one-half years.

The Court also notes that the services rendered by Attorney Miller resulted it cognizable benefits to Debtors: the efforts of counsel resulted in a loan modification which reduced their payments from $1,000.00 to $827.00 per month. Through the plan and loan modification, Debtors were able to address a $24,000.00 arrearage on the mortgage loan, as well as back taxes exceeding $7,800.00. Their second mortgage was stripped through the plan; unsecured creditors were paid twelve percent (12%). Although Debtors are to be commended for their payment efforts, Attorney Miller's services resulted in tangible direct benefits. It would have been desirable to have additional communication to clients that the necessary actions would result in additional charges, but there is no doubt that the work and the result were exemplary.

Accordingly, the Court hereby awards Attorney Miller the following amounts: $1,012.50 for services rendered prior to the filing, $1,250.00 for services covered by the presumptive fee and pursuant to the parties' Agreement, and $1,800.00 for post-confirmation services not covered under the administrative order or the Agreement. The total amount awarded is $4,062.50, of which $1,250.00 has been paid through the chapter 13 plan.

An order will be issued immediately.

# # #

**Service List**:

Toby L. Rosen
Charter One Bank Building, 4th Floor
400 W. Tuscarawas St.
Canton, OH 44702

Donald M. Miller
1400 Market Ave., N.
Canton, OH 44714-2608

Stephen John Cherry
Denise Anne Cherry
2249 Perry Dr SW
Canton, OH 44706